Call the next case of the morning, number 21-20579, Flores v. Lumpkin. Whenever you're ready, Mr. Garris. May it please the court, good morning to you all. My name is Brian Garris. I represent the appellant Fidel Flores who was deprived of his right to the effective assistance of counsel when his trial counsel repeatedly failed to object to inadmissible testimony that the complainant and children in general are truthful and do not lie about sexual abuse. That type of testimony has long been held inadmissible under Texas law, both under traditional bolstering type objections and also as improper expert testimony, although I'm challenging both the expert and lay testimony that was given in this case. And the reason for that is quite simple. It does not, that type of testimony does not help the jury decide facts and issue. Rather, the Texas case law and jurisdictions across the nation have long held that that determines issues for the jury. It invades the province of the jury, and I think going back to the roots of our Sixth Amendment, just the founding of the right to trial by jury is the idea that credibility is an issue that is within the scope of the jury to determine, and that we do not supplant that with folks who can come in and decide those questions for the jury. You made a very complex argument here on, about all sorts of instances of alleged bolstering and so on, but don't some of your complaints go to instances in which the, either the Court of Appeals or the Texas Court of Criminal Appeals held that there wasn't a ground to exclude? I'm sorry, can you repeat the last part of the question? I say, didn't the Texas courts disagree with you on some of the points as to whether some of the evidence should be excluded? Well, I don't think the Texas courts disagree. Well, if we're talking about the Intermediate Court of Appeals where he raised these issues on direct appeal, the Intermediate Court of Appeals found in several instances that his trial counsel, I'm sorry, that the court erred in letting this type of testimony in. Right. But found that the error was ultimately harmless because his trial counsel had failed to object at all those other various points. Well, and then to what extent are we bound by the state court's determinations about admissibility of evidence? Are you accepting the state court's determinations about admissibility? Well, we are accepting the state intermediate court's determinations about admissibility because the state intermediate court determined that this type of stuff was not admissible. Some of it was not admissible. Well, I think if you were to parse through and look at what is being said at various points, so for instance, and I don't have a copy of that case with me, but if you were to look at that Intermediate Court of Appeals, there's one discussion about a certain comment was not a comment on truthfulness, but it's because the lawyer changed his question. So they said, is this the type of testimony that what is the most important piece that you would find truthful? And then the lawyer rephrased his question. So the Court of Appeals was examining the rephrased question, not the original question to which the lawyer made the objection. I guess that may be the case, but the point is I don't think under habeas that this court is allowed to second guess what the Texas Court of Criminal Appeals held. Now, whether it's due process is violated or something, maybe that falls under the rubric of prejudice. But it seemed to me that you were making challenges to evidence that the state courts didn't accept. Well, we think that the Intermediate State Court on Direct Appeal did accept that all of this type of evidence was inadmissible. In fact, wouldn't… Not this type. I mean, okay. All right. And then with respect to the argument that the Texas Court of Criminal Appeals has crafted some, has crafted, and this is the director's argument, that the Texas Court of Criminal Appeals has crafted, or by not commenting on this when they dispatch with it, that AEDPA somehow binds this court to come up with theoretical arguments that the Texas courts would have admitted this, that fails quite simply just to apply the look-through doctrine. This court looks through to the reasonings that the state district court gave in denying this claim for… You can't do that because the Texas Court of Criminal Appeals rejected the district court. There's not an ambiguity about what the TCCA did. Well, the TCCA rejected the state court's findings singularly to the issue related to the unanimity issue. Well, we presented four separate claims. One claim was related to this truthfulness testimony. Claim two was related to the failure to object to jury instructions that did not require unanimity. That is the only, that is the only commentary that the Texas Court of Criminal Appeals gave in their released order was to reject the finding of no prejudice, finding that the state district court erroneously analyzed prejudice by looking at the impact that the prejudice had on direct appeal, not singularly at the trial court level. The Texas Court of Criminal Appeals did not comment in any sort of way on this particular finding. And so this court has the ability to look through and is bound to look through. I think this… You're talking about that Supreme Court case, right? Wilson? Wilson v. Sellers, that's right. But that was one, I believe, where the court said it was ambiguous what the reasoning of the upper court was ambiguous altogether as to what they had found. But here they had implicitly reject or explicitly reject the state habeas recommendation. Well, if that were true, the state habeas recommendation as to this particular claim was to reject it. And so, in essence, that line of rationale would be to reject the rejection even. I guess just to jump on this line of questioning, I mean, I see this as a question of deference. Are we required to defer to the relevant state court decision with respect to the IAC claim? Isn't that what we're talking about? That's correct. Did the state habeas court, the trial level court, what did it hold with respect to deficient performance? Did it find deficiency or no deficiency with respect to not objecting to this kind of testimony? Well, it found that it was trial counsel's strategy to let this type of testimony in. So no deficiency? So no deficiency. Aren't we required to defer to that? You are. But under AEDPA, well, the rules of deference do apply to that, certainly. But we overcome that. And the reason for that is quite simple. And I've challenged this as a matter of under 2254. I had to ask that because it's important to know whether you have to overcome the deference, which is an obstacle. I do. And under 2254, and we've challenged this, these findings of trial strategy under 2254 D.1 and D.2. The director never in his briefing addresses the D.2 portion of the argument. But it's quite clear from the record that it was not trial strategy to let this type of testimony in. The trial counsel identifies several instances. So, for example, he says it was his strategy to not object, to allow consistency testimony in, because he wanted to show that the complaint was consistent. The record is replete with examples where he objects to consistency testimony. Just as this is from Record 1819, this is when he's questioning Mr. Flores. He says, Marvin has been very consistent about what abuse he says happened. Objection, Your Honor. She's asking him to comment on another witness's credibility. But, and, you know, that's a very interesting point, and pardon me for misremembering the record previously. But when the state habeas court did conclude that, didn't it conclude that there was alternatively no prejudice for stricter purposes? It found that as well. But both are rooted in specific fact findings that it was strategy not to let that in, and there wouldn't be prejudice if it was your strategy to let something in. But we're challenging that strategy. We don't think it was his strategy to let those things in. He cites, and we talk about it quite a bit in the briefing, but he cites that he doesn't equate consistency testimony with credibility. That example hit. Let me just ask you a question, because the 4-year-old took the stand. Correct. And the 4-year-old gave a pretty graphic description of what he said Mr. Flores had done. And I'm sorry, but I will have to repeat a bit of this as I understand it. He said he was on, the 4-year-old was on his stomach playing with an electronic device. Mr. Flores was lying next to him. Mr. Flores undressed himself, put himself on top of the 4-year-old, and then what certainly sounds like anal sex occurred. Now, how much more does the jury need to hear to think that that is probably, if that was consistent, which is a statement of fact, not bolstering, how much more does the jury need to hear in order to convict Mr. Flores? Well, it was defense counsel's strategy, and he did show that numerous times this child had given numerous inconsistent statements, and both in open, well, about allegations of abuse. So, for example, he denied the abuse having taken place to the psychotherapist. About that description? Well, when he denies that any abuse had ever taken place, that is inconsistent. Well, I don't know what those questions were about abuse. I guess it would depend. Referencing sexual abuse. So he denied that sexual abuse. Yeah, well, if they asked a 4-year-old, were you sexually abused, I mean, that's not something a 4-year-old knows. Well, I'd have to look at the records. Sure. And there were also several other instances where there were different stories, different changes in the story about whether he had been ever shown pornography, about how he had been touched, about different places where he had been touched, about who touched him. There were differences there. But I also want to bring up that trial counsel cites as his strategy that he didn't want to object repeatedly, but he objected 58 times during this 2-day trial and 18 times to this specific type of evidence. So when trial counsel is saying it was my strategy not to object because I didn't want to object repeatedly, it's just not supported by the record. And then he says that he also didn't equate consistency testimony with credibility. His objections contradict him, and the Texas Court of Criminal Appeals on direct appeal has held otherwise. And then finally, I just want to turn to the recent Fears v. Lumpkin decision that came out from this court. We think that there are significant distinctions between Fears in this case. That testimony in Fears did not come from experts. It was relatively limited. It wasn't nearly as direct as having a Ph.D. psychologist come in and say children can't lie about this. It wasn't repetitive. It wasn't emphasizing closing arguments the way the information here was. The Ph.D. psychologist said kids don't even know how to lie about these things. It wasn't emphatic. It wasn't offered 18 times throughout that trial. So we think that there's massive differences between the facts of that unpublished case and this one. And then I guess turning back also to answer your question from a moment ago, Judge Jones, it's also important that the defendant took the stand and denied that any of this took place. So what you end up having is very much a he said, she said type case where the facts, there's no medical evidence to support it. There's just the statements of one person versus the statements. I thought there was a tear in his rectum. And that's the point of a lot of our very, very nuanced briefing. It got presented that way. It's without dispute that the last contact that Petitioner Flores had with the child in this case came at the end of September. There's a doctor's visit on October 2nd where there's no tear that's found. There's no lesions, no edema, no erythema. And then a tear is observed on October 23rd, more than three weeks later, that the doctor testified very clearly that a tear wouldn't last for more than three to five days. So that tear could not have originated until long after Mr. Flores had his last contact, the last admitted contact. Was there medical evidence of such tears during the time period? No, not at any point. The only tear that is ever observed is October 23rd, and that tear would have come long after the contact. This is the way the Fears case concludes, talking about the assessment of prejudice. Number one, the jury had plenty of opportunities to assess the complainant's, the 14-year-old's, credibility. It could compare her trial testimony with prior accounts, and she was supposed to be an untruthful person. Number two, even if the investigators had kept their assessments of her truthfulness to themselves, their belief in her story would have been implicit because the investigation progressed to an indictment. Number three, on that view, the challenge testimony was cumulative evidence of credibility, and cumulative evidence is harmless. May I briefly respond? Sure, absolutely. Yes, the court looked at that specific record and set of facts and determined that the information there that the investigators believed the person that they had been, believed the statements against the person they had been investigating, where they're the ones that got the indictment, they found that cumulative. That's categorically distinguishable from people who had never even been involved in the investigation coming in and giving their opinions that children don't know how to lie about this stuff. It's not something that they would ever lie about. It's truthful. I'm a Ph.D. psychologist. It's rooted in science. It's rooted in medicine. It's rooted in psychology. The doctor got into the same sort of thing in all my class work in pediatrics. This would be truthful if he's consistent, and by the way, he's consistent. And so we think there's a big distinction between a cumulative finding there with implicit stuff before a jury and things that you have to step outside of and root them in different fields and expert fields, and that's where I draw the distinction. Thank you. Thank you. Mr. Mazzara. Good morning, Your Honors. May it please the Court. Flores has not met EBBA's high burden to relitigate his Strickland claim for which deference to the state court's adjudication is at its apex. Under the doubly deferential standard for Strickland claims, his trial counsel's strategic decisions during trial are virtually unchallengeable, and the CCA's judgment regarding those decisions was objectively reasonable. Even without EBBA, this Court can affirm on any number of independent grounds. Flores' counsel was not deficient because the admissibility decisions were open for debate. Flores cites to no federal authority that deems his counsel's conduct at trial objectively unreasonable, and on this record, there was no prejudice where the jury heard Flores' own testimony and refused to credit it. For these reasons, the Court should affirm the judgment below. First, the state courts did not unreasonably apply Strickland in disposing of Flores' IAC claims, so this claim is barred by Section 2254d1. Strickland claims have two elements, deficient performance of counsel at trial and prejudice resulting from that alleged deficient performance to the outcome of that proceeding. And Flores has not overcome the deference that's given in this circumstance where this Court is supposed to look at the state court's decisions and determine whether no fair-minded— How would you characterize Mr. Flores' lawyer's strategy with respect to not objecting to certain testimony that is— I mean, I think you concede that some of the testimony was inadmissible. Not all of it, but some. Your Honor, yes, I would agree that some of the testimony was certainly inadmissible, but, again, the standard here is not whether or not he objected to everything that was objectionable. He had, as the state trial court— Sorry, as the state habeas trial court found in its findings and facts, he found his affidavit to be—the trial counsel's affidavit to be credible, and in that affidavit, the trial counsel describes the case as being basically an impossible case. Where he had to— The only reasonable doubt that he thought he could evoke with the jury would be by creating some sort of sense of motive to fabricate, and his decisions were all within that context. And, again, the state trial court found those decisions, whether to object or not to object, reasonable, and the standard is not whether the state habeas trial court's decision was correct or not, but whether there was a reasonable approach to the trial counsel's performance. So, and even if the court disagrees with the state regarding deficiency, there was certainly no prejudice in this case. Not only did the child, the victim, testify at trial, and not only did the jury have the ability to weigh the child's testimony, Flores also testified, and during that testimony, he was impeached. His testimony was impeached. This theory of the case that he had that there was a motive to fabricate, he was impeached on that specifically when the prosecutor during cross-examination elicited from him testimony regarding a prior statement before trial that he had made where he had told an investigator that he could think of no reason why the mother would fabricate this sort of story against him. Additionally, during his testimony, it was elicited that he had fled to El Salvador shortly after these accusations were made known to him. How did he get back? Was he extradited? No, Your Honor, he came back of his own accord from what I understand. Could you comment? We asked about medical evidence, and Mr. Garris said that the only medical evidence of tears was after the last time that Mr. Flores had contact with the victim. Could you comment on that? From what I recall, Your Honor, from the record, that the medical evidence was still sufficiently proximate to one of the two claims that were two outcries, so to speak, that the victim made in this case. And there was testimony that was put on during trial. I don't have the record set for that specifically in front of me, but there was testimony put on during trial that discussed the timeline between the outcry by the victim and the appearance of this medical evidence. Did the victim's father actually testify? Yes, Your Honor. I wasn't clear on that. And did he say he didn't believe his son, something like that? That's correct, Your Honor. The father did testify. He said he did not believe his son was telling the truth. Was that evidence objected to by the state? By the state? No, Your Honor. Well, he said it multiple times, and it might have been objected to during the course of that testimony. But during the father's testimony, Flores' trial counsel did establish a foundation for some character of truthfulness evidence and what his character was. And so that was admitted. So again, going back to prejudice, there was no prejudice here in this trial. There can't just be a conceivable likelihood that had this evidence not come in that the trial would have turned out differently. It has to be a substantial likelihood that the trial would have turned out differently had this evidence come in. And again, given the fact of the child's testimony, given Flores' own testimony and the corroborating physical evidence, it's certainly not a substantial likelihood that the trial would have turned out otherwise. Both sides have taken the evidence and broken it down line by line almost, although I haven't looked at the whole transcript anyway, obviously. And is it our job to go over every piece of evidence individually and ascertain whether the attorney erred or whether the courts erred in overruling an objection? Because it seems to me it's not clear sometimes. Well, Your Honor, if the answer isn't clear, then Flores has not met his burden. Under E-1, any sort of findings of fact with regard to anything in the record, the reasonableness of the attorney's conduct, his decision whether to object or not, those decisions, all of that is presumed to be correct under AEDPA and requires clear and convincing evidence to overcome that presumption, which he has not provided. I mean, if the attorney had objected, he objected 58 times, according to Mr. Garris, and presumably some of those were overruled, some of those may have been granted, but apparently there was a lot of other testimony that was unobjected to. So maybe the argument could have been that due process was violated by all of this bolstering as a matter of constitutional law, but it seems to me it's hard to segregate alleged trial court or court of appeals errors from the attorneys, just from what the parties have brought to us. Yes, Your Honor. With regard to looking at every single piece of evidence and every single objection, I think that the approach could be a little bit more generalized. Was there objectionable evidence that was admitted over objection? Was there inadmissible evidence admitted over objection? And was there inadmissible evidence admitted without objection? I think those are the two most important categories to look at here. And it is the case that inadmissible testimony was admitted, and the State concedes that in its brief. But none of the testimony that was admitted, for example, under State law, was per se reversible. And so there's a gray area here whether or not allowing that to be admitted was deficient performance. Because there's a gray area and reasonable minds can disagree on that, FLORES has not met its burden under AEDPA. And also, again, this goes to prejudice as well. If it's not reversible per se, I mean, there needs to be more context that needs to be looked at in order to determine whether the proceeding would have turned out differently. And some of that context, again, are the facts of FLORES' own testimony and the fact that the jury had that to weigh against the victim and the fact that the jury credited the victim over FLORES. So, Your Honor, I would also like to comment on FLORES' Section 2254D2 claim. Towards the end of his brief, FLORES argues that the State habeas court wrongly credited his trial counsel's affidavit and wrongly found it credible and then relied on that in its disposition of FLORES' habeas claim. But under 2254E1, however, the trial court, the State habeas court, gets deference in its findings of fact are presumed correct and its credibility determines are presumed correct. FLORES is not absent clear and convincing evidence otherwise. FLORES provides no additional evidence. It provides no clear and convincing evidence that overcomes that presumption. He just asked that this court re-weigh the credibility of FLORES' trial counsel, Rafe Martinez, and his affidavit, which is not enough to meet the standard under AEDPA. If there are no further questions, the State just asks that the court affirm the judgment below and I see the balance of my time. All right. Thank you. Mr. Garris? Thank you. Yes, it is the case that the standard is clear and convincing evidence and that the fact findings of the trial court are presumed correct, but that's exactly what we attack when we attack his claims that this was his trial strategy to let that in. It's not a re-weighing. It's an assessing. And we can't just let words of trial strategy jump off the page and say that's the end of the analysis. And that's what we went through piece by piece, where he says it was my strategy to let in consistency testimony. No, it wasn't. In opening statement, you said you're going to see this kid is inconsistent. In closing statement, and then throughout the trial, he proves that the kid is inconsistent. And then in closing statements, he says you see all these inconsistencies. So it was never his strategy to let in consistency testimony. Where he says he didn't equate consistency testimony with credibility, that's destroyed by his own words, where he objects and says it's the same thing, Judge. Credibility and consistency are the same. When he says in his affidavit that he didn't object because he didn't want to object repeatedly, that's contradicted by 58 objections and 18 to this specific type of evidence. Well, you know, that's the least troubling of his trial strategy to me because if the court's not going with you, you risk annoying the jury by continuously filing an objection. Well, then we can look at the placement of those objections which occur throughout the entire trial through every state's witness, and then we can see that right before the state rests its case in chief, he goes up for a long colloquy, about a 10-page long colloquy in the transcript, where he's discussing this exact issue. They're going into this. And the state responds, I'm not offering something to the effect of I'm not offering this stuff to show he's telling the truth. I'm offering it to show he's not lying. And so the state knew exactly what they're offering, and he knew that that's what they were doing, and that's why he objected to it. With respect to the 58 objections, do you have a sense of, I mean, were several of his objections sustained? Sure. So he was making some headway. No, he was. And the court, even in that colloquy, is recognizing, like, you know, we've heard a lot about this. We're not going into this. And this was also part of a big discussion in limine. He didn't file a motion in limine related to this. But he wanted to, he said, I plan to go into reputation evidence about the truthfulness of the kid. And the state, ironically, objects and says, We can't go into truthfulness of the kid. And so fighting against the idea of him going into specific instances of conduct. But, yes, this ultimately boils down, and I think you did ask about whether the father testified. So, yes, there were pieces on either side of this. All the evidence was contested. But what Flores didn't have was a pediatrician, a psychotherapist, a psychologist, a forensic interview, and a police officer coming in and saying, You're telling the truth. And that's what the other side had. Some of that was, it wasn't clear to me that some of that testimony that you were quarreling with was objectionable, even under Yount. Well, the Edwards case, I think, makes that clear, that it is that when you set out some factors, Here's how we know a kid is telling the truth, and he fits those factors. That is what happened, and that's what the intermediate... If all the experts said is, Here is how I look at, you know, these cases, and here are the factors I look at... That would be fine, and that would be permissible. But when you say, Here are the factors that I look at, and that's how you know someone's telling the truth, that is what the intermediate court of appeals found crosses the line. How many total instances are you saying that bridge was crossed? Every instance that we put in that we say is not objected to, we think that the bridge was crossed. And that's what the intermediate court of appeals found. It found that when you tether in factors... You've added things beyond what the court of appeals ruled on, right? I have included the ones that they've referenced, but then I went through page by page of the record and tried to find every instance that would. I don't know that the intermediate court of appeals opinion was meant to be exhaustive in that regard. Isn't it also correct, as Mr. Mazzara said, that if there's room for doubt about how much this testimony was bolstering or connecting factors to the credibility of the complainant, that we give deference to the findings? Well, and there were no findings by the state court with respect to this. The state district court only rooted its determination in trial strategy. That was found by the record. And then we get to the question of cumulativeness. May I respond briefly? Yes, this court does have to give deference to the state court findings, but we don't think that there are any findings that relate to this, and we think the intermediate court of appeals has foreclosed and shown that this stuff was inadmissible. Thank you. Okay, thank you. And don't worry if I have erroneously stated the record here. I won't let that cloud my evaluation later on. All right. We have one more.